**SO ORDERED.**

**SIGNED this 25 day of February, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

**EASTHAVEN MARINA GROUP, LLC,**

      Debtor.                              CASE NO. 08-05453-8-JRL
                                                        Chapter 11
_____

## ORDER

This case is before the court on the motion to dismiss by B&M Holdings, LLC ("B&M Holdings").  The court conducted a hearing on this matter on four non-consecutive days in December 2008 and January 2009 in Wilmington, North Carolina.  This order confirms and provides the rationale for the oral ruling at the conclusion of the hearing denying the motion to dismiss.

## BACKGROUND

At the center of this case is a marina located in Pender County, North Carolina on Scotts Hill Loop Road.  Prior to March 1, 2007, B&M Holdings owned the marina, a convenience store, and accompanying dock (together, the "Marina Property").  On February 6, 2006, Franklin Construction Co. ("Franklin Construction") entered into an agreement to purchase the Marina Property from B&M Holdings for $11,000,000.00 (the "Purchase Agreement").  David White

("White") was the owner of Franklin Construction. In October 2006, Franklin Construction assigned its interest in the Purchase Agreement to "Scotts Hill Marina, LLC."[1]

SHM Marina Group, LLC ("SHM") is a North Carolina limited liability company managed by White. On March 1, 2007, SHM and B&M Holdings executed an addendum to the Purchase Agreement. Under the terms of this addendum, SHM was required to pay $2,000,000.00 to B&M Holdings at closing and execute a promissory note and deed of trust securing the balance of $9,000,000.00. The next day, SHM and B&M Holdings closed on the sale of the Marina Property. At closing, SHM executed and delivered a deed of trust to Fuss Law Firm, P.C. ("Fuss Law"), as trustee, in favor of B&M Holdings (the "Deed of Trust"). The Deed of Trust, dated March 1, 2007, secured a note to B&M Holdings in the principal amount of $9,000,000.00, dated "as of March 1, 2007." The Deed of Trust was recorded in the Pender County Register of Deeds on March 2, 2007 at Book 3179, Page 109. Also on March 2, 2007, a note in favor of B&M Holdings in the original principal amount of $9,000,000.00, dated March 2, 2007, was executed by "Scotts Hill Marina Group, LLC" (the "Note"). Scotts Hill Marina Group, LLC does not exist as a legal entity in North Carolina. Fuss Law prepared the Purchase Agreement, addendum, Deed of Trust, and Note, and White signed each of these documents on behalf of Franklin Construction and SHM. On the same day, B&M Holdings executed a general warranty deed conveying the Marina Property to SHM.

On November 9, 2007, SHM executed a general warranty deed conveying the Marina Property to White (the "Deed to White"). The Deed to White provided that the conveyance was

---

[1]Scotts Hill Marina is the common name used by the members of SHM Marina Group, LLC to refer to the Marina Property. There is no record of a legal entity in North Carolina registered under the name "Scotts Hill Marina LLC."

"subject to deed of trust to B&M Holdings, LLC in the amount of $9,000,000.00 recorded in Book 3176, Page 109, Pender County Registry."  On February 8, 2008, White conveyed the Marina Property to the debtor pursuant to a general warranty deed which provided that the conveyance was "subject to deed of trust recorded in Book 3176, Page 109" (the "Deed to Debtor").  White is the sole member of the debtor and signed both deeds.

The debtor filed for Chapter 11 bankruptcy on August 14, 2008.  The debtor's schedules provide for a "contingent and disputed" unsecured claim in favor of B&M Holdings in the amount of $10,077,398.00.  The schedules include two additional unsecured creditors, David Dickey and White, whose claims total $26,000.00 and $15,039.00, respectively.  On October 15, 2008, B&M Holdings filed a motion to dismiss the debtor's bankruptcy case.

On October 22, 2008, the debtor filed a motion for summary judgment against B&M Holdings, asking the court to avoid its obligation to pay B&M Holdings based on discrepancies between the Deed of Trust and Note.  At a hearing on January 28, 2009, the court denied the debtor's motion and enforced the Note and Deed of Trust.

## DISCUSSION

B&M Holdings moves to dismiss the debtor's bankruptcy case for cause.  Section 1112(b) of the Bankruptcy Code authorizes the court to dismiss a Chapter 11 case "if the movant establishes cause."  11 U.S.C. § 1112(b)(1).  A lack of good faith by the debtor in filing a petition constitutes cause for dismissal under § 1112(b).  Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1989) (citing In re Little Creek Dev. Co., 779 F.2d 1068, 1072 (5th Cir. 1986)).  The Fourth Circuit has adopted a two-pronged test to determine whether a Chapter 11 petition was filed in good faith.  Under this test, the movant must show "both objective futility and

3

subjective bad faith . . . in order to warrant dismissals for want of good faith in filing." Carolin at 700-01. The court should exercise "great care and caution" and look to the totality of the circumstances when considering whether to dismiss a case at the outset for want of good faith. Id. at 700, 701.

## A. Subjective Bad Faith

The court will consider first the debtor's motive for filing bankruptcy. Subjective bad faith is present when the petitioner's motive for filing is to abuse the bankruptcy process and to invoke the automatic stay without the intent or ability to reorganize. Carolin at 702 (citing In re Thirtieth Place, Inc., 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983)). B&M Holdings contends that the debtor's case was founded on bad faith and alleges that the debtor's primary purpose for filing was to avoid its obligation to B&M Holdings. B&M Holdings further contends that the debtor's principal, White, engaged in gross mismanagement of the Marina Property and gave false information and testimony subsequent to the petition date.

First, B&M Holdings contends that the debtor's primary purpose for filing was to abuse the bankruptcy process by taking advantage of avoidance powers unique to the Bankruptcy Code in an attempt to avoid its obligations under the Note and Deed of Trust. At hearing, B&M Holdings examined White as an adverse witness. White established that on March 2, 2007, he mistakenly executed the Note on behalf of "Scotts Hill Marina Group, LLC." White established that he was not aware of any entity registered in North Carolina under the name "Scotts Hill Marina Group, LLC," and that his intent was to sign as a member of SHM. White also admitted that the Deed of Trust incorrectly referred to the date of the Note as "March 1, 2007." White stated that it was always his intent to secure the Note with the Deed of Trust on behalf of SHM.

4

However, White established that the debtor sought to avoid its obligations to B&M Holdings in a separate action before this court.  As a result, B&M Holdings contends that the debtor was abusing the bankruptcy process by attempting to undo its obligation to pay approximately $9,000,000.00 to B&M Holdings pursuant to the Note and Deed of Trust.

In response, the debtor argues that White had no knowledge of the errors in the Note or Deed of Trust prior to meeting with a bankruptcy attorney and that it filed bankruptcy because it could not satisfy or refinance its obligations to creditors.  First, the debtor established that White was not responsible for the discrepancies in names and dates contained in the Note and Deed of Trust.  At hearing, William Fuss, an attorney at Fuss Law, testified before the court.  Mr. Fuss established that he prepared the Note and Deed of Trust for B&M Holdings and SHM.  On cross-examination, Mr. Fuss admitted that he erroneously identified the maker of the Note as "Scotts Hill Marina Group, LLC."  In addition, Mr. Fuss admitted that he made a mistake in the Deed of Trust by incorrectly referring to the date of the Note as March 1, 2007 instead of March 2, 2007.  In addition, White established that he relied on Mr. Fuss to accurately draft the purchase documents and did not notice the drafting errors at signing.  White further established that he was unaware of the errors in the Note and Deed of Trust until after speaking with counsel about filing for bankruptcy.  Second, the debtor argues that its petition was necessitated by the debtor's inability to refinance or make payments to creditors.  At hearing, White testified about the debtor's efforts to obtain financing.  White established that he consulted with several financing companies about obtaining a loan for the drystack facility and the Marina Property.  White further established that he received letters of intent from at least two financing companies, Virginia Commercial Capital Corporation and Hall Structured Finance.  However, neither of

5

these companies provided the debtor with financing.  Nevertheless, White established that the debtor intended to meet its obligations under the Note through its plan of reorganization.

      Second, B&M Holdings argues that subjective bad faith is present because the debtor has no likelihood of successfully reorganizing.  At hearing, Johnny Bradshaw, the member-manager of B&M Holdings, testified on behalf of B&M Holdings.  Mr. Bradshaw established that he negotiated with White and Steve Shuttleworth ("Shuttleworth"), a member of SHM at the time, for the sale of the Marina Property and warned them that the marina, on its own, would not generate enough income to cover its purchase price.  In addition, Mr. Bradshaw testified that the sale of the Marina Property was contingent upon B&M Holdings being paid in full before it would allow an easement to be placed on the property or the sale of boat slips.  Also at hearing, B&M Holdings produced a draft of a deed of easement.  Shuttleworth, a former member of SHM, testified that no agreement had been reached with B&M Holdings for the allowance of an easement and that he had never seen the deed of easement prior to this hearing.  Without an easement on the Marina Property, B&M Holdings asserts that the debtor cannot carry out a successful reorganization.

      In response, the debtor argues that it has a reasonable likelihood of successfully reorganizing.  First, White established that the debtor's ability to succeed was dependent on the success of related entities in which White was involved.  For example, White formed SHM Boat Storage, LLC for the purpose of developing and operating a drystack storage facility on approximately 13 acres of real property located about one mile from the Marina Property.  On the date of hearing, White was seeking construction financing for the drystack.  In addition, White was a shareholder in Sidbury Development, Inc. and Sidbury Land Holdings, LLC (the

6

"Sidbury Project"), which were formed for the purpose of developing approximately 664 acres of property within close proximity to the Marina Property. Second, White established that the construction of the drystack was largely dependent on the creation of an easement over the Marina Property for the benefit of SHM Boat Storage, LLC. In contrast to the testimony of Mr. Bradshaw, White testified that SHM purchased the Marina Property with the understanding that B&M Holdings would convey an easement on the property in order to integrate the drystack facility. However, no easement was conveyed. White testified that B&M Holdings and Shuttleworth were aware of the importance to the debtor of creating such an easement. At hearing, the debtor produced an email from Shuttleworth dated May 15, 2007 in which Shuttleworth indicated that an easement was required in order to obtain financing for the drystack. The debtor produced a second email, addressed to Shuttleworth dated June 19, 2007, which included a draft of the deed of easement as an attachment.

Third, B&M Holdings contends that White grossly mismanaged the Marina Property. At hearing, Shuttleworth testified on behalf of B&M Holdings. Shuttleworth was a member of SHM and business partner of White prior to November 2007. Shuttleworth established that White worked with various lenders in an attempt to obtain financing for the Marina Property and related projects. However, Shuttleworth claimed that White made misrepresentations to lenders in an attempt to obtain financing. Shuttleworth testified that lenders were unwilling to provide financing to White because White failed to disclose prior lawsuits or his criminal background to lenders. At hearing, Shuttleworth named two lenders, Hall Structured Finance and Cruise Financial, as lenders who refused to provide financing due to White's criminal record. Shuttleworth also testified that White used money belonging to Shuttleworth to pay for certain

expenses of SHM and that he transferred funds to SHM's related entities without Shuttleworth's permission. Shuttleworth established that White removed Shuttleworth from SHM's checking account in June 2007 and purchased Shuttleworth's interest in SHM in November 2007.

In response, the debtor argues that White did not engage in mismanagement and that he terminated his partnership with Shuttleworth out of concern over Shuttleworth's mishandling of funds. Specifically, White established at hearing that Shuttleworth transferred funds to Colorado Coastal Development, Inc., a company in which White had no interest and which was at risk of dissolution. White also established that Shuttleworth was involved in several lawsuits which adversely affected the debtor's ability to obtain financing. In addition to his concerns regarding Shuttleworth's management of funds, White testified that he ceased his business relationship with Shuttleworth after observing a change in Shuttleworth's demeanor and because he suspected Shuttleworth had a drug problem. Additionally, White testified that several allegations made by Shuttleworth were incorrect. Specifically, White established that Shuttleworth authorized loans from SHM to SHM Boat Storage, LLC. At hearing, the debtor produced a check signed by Shuttleworth on behalf of SHM, made out to SHM Boat Storage, LLC in the amount of $35,500.00 for the purpose of a "loan for interest reserve." Additionally, White established that although Hall Structured Finance turned down his request for financing, it never asked him to disclose his criminal record.

Fourth, B&M Holdings contends that the debtor gave false information in its schedules and during its 341 meeting. At hearing, counsel for B&M Holdings questioned White about amendments to the debtor's schedules. White admitted that the debtor's initial statement of financial affairs inaccurately disclosed income for 2008 in the amount of $58,248.01. However,

White established that the amount originally reported was a bookkeeper's error and that White corrected this error amending the statement of financial affairs to account for approximately $174,075.00 in income earned though August 2008.  B&M Holdings also contends that White gave false testimony at the debtor's 341 meeting on October 1, 2008.  Specifically, B&M Holdings alleges that White lied about transferring funds from the debtor to SHM Boat Storage, LLC when he testified that he never "diverted" funds from the debtor to another entity.  At hearing, White maintained that he answered all questions truthfully and explained that he did not reply affirmatively to B&M Holdings' inquiry about diverted funds because he believed the word "divert" carried a malicious connotation.

**B. Objective Futility**

B&M Holdings contends that the debtor's case is objectively futile.  The court's inquiry into objective futility must focus on whether "there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's 'terminal euphoria'."  Carolin at 701-02 (quoting Little Creek, 779 F.2d at 1073).  B&M Holdings asserts that the debtor's case must be dismissed because the debtor owns a single asset that is deteriorating in value and there is no prospect of reorganization.

In response, the debtor asserts there is a reasonable likelihood that it can successfully reorganize.  White established that the Marina Property generated approximately $180,000.00 in net income in 2008, representing an 18% increase over the prior year.  White also established that he spent a significant amount of time and resources in an attempt to obtain financing for the drystack facility and the debtor's obligation to B&M Holdings.  White testified that at least one lender was willing to provide financing if the debtor could obtain an easement for the benefit of

the drystack facility.

The test for lack of good faith is two-pronged and requires the movant to show both subjective bad faith and objective futility in order to warrant dismissal for want of good faith. <u>Carolin</u> at 700-01.  In the case at bar, the court finds that based on the totality of the circumstances, the debtor demonstrated good faith in filing its petition.  In arriving at this conclusion, the court finds credible White's testimony that he explored all options before considering bankruptcy and that the impaired real estate market and corresponding difficulty in obtaining financing resulted in the debtor's filing.  Furthermore, White gave credible testimony that he was unaware that the debtor's obligations to B&M Holdings were potentially avoidable until after he decided to turn to bankruptcy for relief.  In addition, the court finds that Shuttleworth's allegations that White mismanaged the Marina Property were largely unsupported, clouded by the former business partners' strained relationship, and contradicted by credible testimony and evidence.  Moreover, the court finds that any false testimony by White was either unintentional or corrected by amendment.  In summary, the court finds that there is insufficient evidence to conclude that the debtor harbored bad intentions when filing its petition.  As to the debtor's ultimate futility, the court's inquiry into this matter is best reserved for the hearing on confirmation.

Based on the foregoing, the motion to dismiss the debtor's case for lack of good faith is DENIED.

"END OF DOCUMENT"