**SO ORDERED.**

**SIGNED this 26 day of February, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

EASTHAVEN MARINA GROUP, LLC,

    Debtor.                          CASE NO. 08-05453-8-JRL
                                        Chapter 11
_____

**ORDER**

This case comes before the court on the emergency motion for authority to use cash collateral. The court conducted a preliminary hearing on this matter on February 25, 2009 in Raleigh, North Carolina.

**BACKGROUND**

On March 1, 2007, SHM Marina Group, LLC executed a note and purchase money deed of trust and security agreement ("Deed of Trust") securing property consisting of a marina on Scotts Hill Loop Road in Pender County, North Carolina (the "Marina Property"). The beneficiary of the Deed of Trust was B&M Holdings, LLC ("B&M"). On November 9, 2007, SHM Marina Group, LLC executed a general warranty deed conveying the Marina Property to David White, a member of the debtor. On February 8, 2008, Mr. White conveyed the Marina

Property to the debtor.  Both conveyances were made subject to the Deed of Trust.  In addition to the Marina Property, the Deed of Trust purported to secure:

> "[A]ll and singular the tenements, hereditaments, easements, privileges and appurtenances thereunto belonging or in anywise appertaining to the Land, and the reversion or reversions, remainder and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel of the Land; and
>
> . . .
>
> TOGETHER with any and all rents and security deposits which are now due or hereafter become due by reason of the renting, leasing and bailment of the Land, the improvements or the Equipment . . . ."

Deed of Trust, Book 3176, P. 110, Pender County Register of Deeds (March 1, 2007).

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on August 13, 2008. Subsequently, B&M filed a proof of claim in the amount of approximately $10,077,398.00.  On October 22, 2008, the debtor filed an adversary proceeding against B&M in which the debtor challenged the validity of B&M's claim.  On November 21, 2008, the debtor filed a motion for summary judgment and the court conducted a hearing on January 28, 2009.  At the conclusion of the hearing, the court orally confirmed the validity of B&M's claim and denied the debtor's motion.  On February 17, 2009, the debtor filed an emergency motion for authority to use cash collateral.

## **DISCUSSION**

The debtor requests permission for the interim use of cash collateral.  Under § 363 of the

Bankruptcy Code, in a Chapter 11 case, the debtor-in-possession may not "use, sell, or lease cash collateral . . . unless . . . (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  In addition, the debtor-in-possession must "segregate and account for any cash collateral in the [debtor's] possession, custody, or control." Id. § 363(c)(4).  In a preliminary hearing for the use of cash collateral, the court "may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED R. BANKR. P. 4001(b)(2).

The debtor requests permission to use cash collateral and contends that such use is necessary in order to continue its operations.  At hearing, David White, the principal of the debtor, testified before the court.  Mr. White projected that the debtor would earn approximately $10,260.00 from the collection of boat slip rental fees between February 16 and March 17, 2009.  The parties concede that the revenue from boat slip rental fees is rent from property secured by the Deed of Trust and is therefore cash collateral.  Mr. White established that the debtor's additional projected income during this 30-day period included receipts from store sales in the amount of $3,323.32 and parking and ramp fees totaling $1,060.00.  Unlike the boat slip rental fees, the court finds that the debtor's income from store sales and parking and ramp fees is not secured by the Deed of Trust and does not constitute cash collateral.  Mr. White further established that the debtor's projected expenses for February 16, 2009 through March 17, 2009 totaled $33,523.26.

B&M Holdings objects to the debtor's motion and argues that the debtor's use of cash collateral is not required for its continued operation.  In addition, B&M Holdings contends that

3

the use of cash collateral is not necessary to avoid immediate and irreparable harm. In support of its position, B&M established that the debtor's operating account had a positive balance of $58,497.29 on February 16, 2009. Thus, B&M contends that the debtor has cash on hand sufficient to maintain its business operations through at least March 17, 2009.

The court agrees with B&M and finds that the use of cash collateral is not necessary for the debtor to continue operations over the next fifteen days.

Based on the foregoing, the debtor's interim request to use cash collateral is DENIED. Going forward, the debtor is required to segregate cash collateral by placing the revenue from boat slip rental fees in escrow, pending a final hearing on the use of cash collateral. The debtor's remaining revenue, in the form of receipts from store sales and parking and ramp fees, does not constitute cash collateral and may be used for the debtor's operating expenses.

"END OF DOCUMENT"