**SO ORDERED.**

**SIGNED this 12 day of May, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

EASTHAVEN MARINA GROUP, LLC              Case No. 08-05453-8-JRL
                                         Chapter 11
    Debtor.
_____

ORDER

This matter came before the court on the motion for relief from stay. The court conducted a hearing on this matter on April 21, 2009, in Wilmington, North Carolina.

BACKGROUND

On August 13, 2008, the debtor filed for relief under Chapter 11 of the Bankruptcy Code. Throughout its case, the debtor has owned and operated a marina known as Scotts Hill Marina in Pender County, North Carolina. The marina consists of approximately 70 wet slips, a boat ramp, a clubhouse, two rental mobile homes, and a convenience store with an attached parking lot. David White is the sole member-manager of the debtor.

B&M Holdings, LLC ("B&M") is the holder of a purchase money promissory note in the principal amount of $9,000,000.00 which was executed in favor of B&M by SHM Marina Group, LLC ("SHM"), a predecessor of the debtor. The note is secured by a deed of trust, which

grants a security interest in the marina property and grants security for the indebtedness owed to B&M. On November 9, 2007, SHM transferred the property by general warranty deed to David White. David White then transferred the property to the debtor on February 6, 2008. Both subsequent deeds stated that the property was taken subject to the debt. On March 13, 2009, this court entered an order in a related adversary proceeding upholding the debtor's obligation to B&M under the deed of trust.

## DISCUSSION

11 U.S.C. § 362(d)(2) provides that the court shall grant relief from the automatic stay with respect to an act against property if (1) there is no equity in the property, and (2) the property is not necessary for an effective reorganization. The court has concluded that B&M is entitled to relief from stay on this basis.

Equity, under § 362(d)(2)(A), "refers to the difference between the property value and the total amount of liens against it." In re 6200 Ridge, Inc., 69 B.R. 837, 842 (Bankr. E.D. Pa 1987)(citing, In re Liona Corp., 68 B.R. 761, 766 (Bankr. E.D. Pa 1987)). Here, the debtor concedes that there is no equity in the property. Although the concession was made, B&M proffered evidence that supports the position that the debtor lacks equity. The most recent appraisal conducted on January 7, 2009, valued the property at $6,000,000.00. This is a best scenario figure. At the hearing, Hector Ingram, the appraiser, asserted that in all likelihood the value of the property has continued to decline by 3-5% in current market conditions. However, the fact that no equity exists in the property is by itself insufficient to grant relief from stay. However, the burden is on the debtor to meet the second prong of the test: to show that a reorganization plan can be effectuated in a reasonable period of time. In re Mikole Developers,

2

Inc., 14 B.R. 524, 526 (Bankr. E.D. Pa 1981).

Proving that the subject property is necessary for the debtor's reorganization is not merely a showing that reorganization is probable, but rather that the property is absolutely essential to achieving a successful reorganization within a *foreseeable* time period. (emphasis added). Many courts refer to this as a time "in prospect." *See*, In re Global Ship Sys., LLC, 391 B.R. 193, 207 (Bankr. S.D. Ga. 2007). That the property is "indispensable to the debtor's survival, or that the property is needed in the debtor's business is insufficient, without more, to deny relief from the automatic stay where there is an absence of an equity cushion." In re Mikole, 14 B.R. at 526.

In his professional opinion, Ingram noted that, compared to other similarly situated marinas, the debtor's property was ineptly maintained. Of particular concern was deferred maintenance to the failing bulkhead, lack of dredging sedimentation from the boat slips, and sparsely stocked shelves in the convenience store. The debtor responded that although further dredging was needed, it rented all of its boat slips without difficulty at a higher fee than in previous years. The debtor further asserted that it was aware of the need to repair the bulkhead, which is why a pending application for an engineer was filed. It was the debtor's expectation that overall revenues would increase as summer months approach. However, the reasonable probability that the debtor can effectively reorganize "cannot be grounded solely on speculation . . . and a mere financial pipe dream is insufficient to meet the requirements. . . ." In re Global Ship Sys, LLC, 391 B.R. at 208, (*citing*, In re 6200 Ridge, Inc., 69 B.R. at 834 (citations omitted)); *also see*, In re Asheville Bldg. Assoc., 93 B.R. 913, 917 (Bankr. W.D.N.C. 1988).

A bare hope for future reorganization is not enough to bring about a successful

reorganization. *See*, In re Mikole, 14 B.R. at 526-527.  The debtor offered into evidence a 30 day operating budget.  The budget projected a total disbursement in the amount of $36,181.05.  After reviewing the budget, the court noted that the debtor's income is woefully short, even in spring months, to meet its expenses.  At present even without the additional expense of monthly plan payments, the debtor is barely breaking even.  Critically, with a confirmation hearing less than a month away, the debtor was unable to offer any additional evidence of where funds, potentially in the tens of thousands of dollars, would be generated to provide adequate protection and maintain payments on the secured debt necessary for a successful reorganization. Counsel for the debtor suggested only that the debtor make interest payments into the plan for a period of time before taking on the full expense of a regular plan payment.

Customarily, the best evidence of effective reorganization is what the debtor has done since its Chapter 11 petition was filed.  While the debtor has espoused seemingly well-conceived business plans that include replacing the bulkheads, getting the clubhouse up and running, and refinancing to build a new dry stack, no action has been taken.  In the nine months the debtor has already been in bankruptcy, all of its "solutions" remain elusive.  Treatment of the secured debt under the most generous terms is still far beyond what the debtor can generate.  With no equity held in the property and all plans for reorganization hung on the proverbial "financial pipe dream," relief from stay is merited.

Based on the foregoing, the motion for relief from the automatic stay is GRANTED.

END OF DOCUMENT